03:52    1                    IN THE UNITED STATES DISTRICT COURT
         2                   FOR THE WESTERN DISTRICT OF TEXAS
                                      WACO DIVISION
         3
          DEMARAY LLC                        * October 20 & 21, 2020
         4                                   *
          VS.                                * CIVIL ACTION NOS.
         5                                   *
          INTEL CORPORATION                  *    W-20-CV-634
         6   SAMSUNG ELECTRONICS, ET AL    *    W-20-CV-636

         7              BEFORE THE HONORABLE ALAN D ALBRIGHT
                           TELEPHONIC DISCOVERY HEARING
         8
          APPEARANCES:
         9
          For the Plaintiff:        Crawford Maclain Wells, Esq.
        10                          Benjamin W. Hattenbach, Esq.
                                    Irell & Manella LLP
        11                          1800 Avenue of the Stars, Suite 900
                                    Los Angeles, CA 90067
        12
                                    Richard D. Milvenan, Esq.
        13                          McGinnis Lochridge and Kilgore
                                    600 Congress Avenue, Suite 2100
        14                          Austin, TX 78701

        15   For Defendant Intel:    J. Stephen Ravel, Esq.
                                     Kelly Hart & Hallman LLP
        16                           303 Colorado Street, Suite 2000
                                     Austin, TX 78701
        17
          For Samsung Defendants:   Brian Christopher Nash, Esq.
        18                          Pillsbury Winthrop Shaw Pittman LLP
                                    401 Congress Avenue, Suite 1700
        19                          Austin, TX 78701-3797

        20   Court Reporter:         Kristie M. Davis, CRR, RMR
                                     PO Box 20994
        21                           Waco, Texas 76702-0994
                                     (254) 340-6114
        22

        23        Proceedings recorded by mechanical stenography, transcript

        24   produced by computer-aided transcription.

04:01   25

04:01  1        (October 20, 2020, 4:01 p.m.)

04:01  2        MS. MILES:  Telephonic discovery hearing in Civil Action

04:01  3   W-20-CV-634 and W-20-CV-636, styled Demaray LLC versus Intel

04:01  4   Corporation and Demaray LLC versus Samsung Electronics Company,

04:01  5   Limited and others.

04:01  6        THE COURT:  If I could have announcements from counsel,

04:01  7   please.

04:01  8        MR. MILVENAN:  Judge, Rick Milvenan from McGinnis for

04:01  9   plaintiff Demaray, joined by Ben Hattenbach and Maclain Wells

04:01 10   from Irell & Manella.

04:01 11        MR. RAVEL:  Your Honor, Steve Ravel for defendant Intel,

04:02 12   along with my client representative John Edwards.

04:02 13        THE COURT:  Very good.  And what do we have to talk about?

04:02 14        MR. NASH:  Good afternoon, Your Honor.

04:02 15        MR. WELLS:  So, Your Honor, this is --

04:02 16        MR. NASH:  Excuse me, Maclain.  I'd like to say hello.

04:02 17        Judge, this is Brian Nash on behalf of Samsung or the

04:02 18   Samsung defendants.

04:02 19        THE COURT:  Okay.  Thank you.

04:02 20        MR. NASH:  I'm happy to -- we were the ones that requested

04:02 21   the conference, Your Honor.  So I'm happy to kind of jump in

04:02 22   and let you know the issue that we're dealing with if that

04:02 23   would be helpful.

04:02 24        THE COURT:  Please.

04:02 25        MR. WELLS:  Your Honor, it's our confidential information.

04:02  1  So we certainly think that it's appropriate for us to go first.

04:02  2       THE COURT:  Who just said that?  Was it Mr. Milvenan?

04:02  3       MR. WELLS:  That was Mclain Wells of Irell & Manella.

04:02  4       THE COURT:  Okay.  I don't care who goes first.  So...

04:02  5       MR. WELLS:  Well, Your Honor, this is Maclain Wells of

04:02  6  Irell & Manella and I wanted to just give you a breakdown of

04:03  7  where we are.

04:03  8       THE COURT:  Okay.

04:03  9       MR. WELLS:  So the dispute revolves around the party's

04:03  10  Demaray's preliminary infringement contentions.  We prepared

04:03  11  preliminary infringement contentions based upon internal

04:03  12  Demaray documents that are marked attorneys' eyes only under

04:03  13  the interim protective order as well as third party reverse

04:03  14  engineering reports of Intel and Samsung products and the other

04:03  15  contractual obligation to maintain the confidentiality of those

04:03  16  materials.  So we designated our preliminary infringement

04:03  17  contentions attorneys' eyes only, as we thought proper.

04:03  18       Now, the Court received the parties' positions regarding

04:03  19  this in the CMC update last week and ruled on this matter on

04:03  20  Friday, and the Court determined that the attorneys' eyes only

04:03  21  confidentiality restriction was too narrow and that the

04:03  22  materials should be treated as confidential, which the Court

04:03  23  said would be sufficient to protect the information while

04:03  24  allowing defendants to confer with their clients.

04:04  25       Now, the Court's interim protective order is clear that

04:04  1  confidential information can be disclosed to in-house counsel

04:04  2  on an as needed basis, other persons in house at defendants

04:04  3  once they're identified and it can be used only for the

04:04  4  purposes of litigating this case.  Now, we understand the

04:04  5  Court's order.  We're ready to treat the materials exactly as

04:04  6  the Court has suggested.

04:04  7      Now, the other side has come and said they want clarity

04:04  8  regarding the Court's ruling, regarding what restrictions apply

04:04  9  to confidential information.  So the dispute is what proper use

04:04  10  defendants can make of Demaray's confidential information.

04:04  11      At the meet and confer on Friday between counsel after the

04:04  12  Court's ruling, defendants took the position that they could

04:04  13  still show this information to third parties such as their

04:04  14  suppliers -- one example of a supplier is Applied Materials --

04:04  15  and use it for any related disputes.  It's our position that

04:05  16  that really doesn't provide any protection at all.  Applied

04:05  17  Materials has filed a second or a third filed litigation in

04:05  18  California and requested the California court enjoin this Court

04:05  19  from proceeding with this case.  And Applied Materials has

04:05  20  indicated that it intends to seek IPRs on the patents and more

04:05  21  than likely will seek to stay the California action.  So we

04:05  22  think that it's clear that defendants are trying to leverage

04:05  23  this information to delay the -- to delay the case.

04:05  24      Now, the defendants claim that they are suffering

04:05  25  prejudice because they are unable to prepare a transfer motion,

04:05  1   are unable to prepare invalidity contentions and do a document

04:05  2   collection associated therewith, but they haven't articulated

04:05  3   any reason why the Court's confidentiality designation -- it

04:05  4   impedes their progress on those topics.  They can certainly ask

04:06  5   questions and obtain materials on these subjects from their own

04:06  6   personnel as well as third parties without disclosing Demaray's

04:06  7   confidential information.  There's nothing exceptional of that

04:06  8   process.

04:06  9       They've already started to claim that they're going to

04:06  10  need schedule extensions for a potential motion to transfer as

04:06  11  well as the invalidity disclosures and document collection

04:06  12  associated therewith.  We respectfully submit that the Court

04:06  13  has a proposed schedule using the Court's trial dates of

04:06  14  December 27th, 2001 [sic] and has had it for five days.

04:06  15  Defendants haven't raised any reasonable issues with that trial

04:06  16  date, and the Court should enter the proposed schedule and this

04:06  17  case should proceed.

04:06  18      Thank you, Your Honor.

04:06  19      THE COURT:  Okay.

04:06  20      MR. NASH:  Your Honor, this is Brian Nash for the Samsung

04:06  21  defendants.  May I sort of address the reason why we asked for

04:07  22  this conference?

04:07  23      THE COURT:  Sure.

04:07  24      MR. NASH:  Okay.  I apologize, Your Honor, but that -- I

04:07  25  don't know -- Mr. Wells seems to have sort of gotten ahead of

04:07  1   things because as sort of the fundamental request that the

04:07  2   defendants had on this issue was whether this designation is

04:07  3   proper at all, and I heard him say that this is based off of

04:07  4   confidential RE reports and confidential internal Demaray

04:07  5   documents, and, Your Honor, I don't see that at all, and, in

04:07  6   fact, we submitted these infringement contentions for in camera

04:07  7   inspection, because I've been doing this a long time and I have

04:07  8   never had initial infringement contentions designated

04:07  9   confidential.  Now, I could understand if this was somehow

04:07  10  reproducing maybe a confidential RE report or something to that

04:07  11  effect, but I asked opposing counsel in multiple meet and

04:07  12  confers, what is it about this that's confidential?  Because I

04:08  13  read the entire document and I honestly couldn't identify a

04:08  14  single thing in my review.  And he refused to identify to me

04:08  15  what was confidential in the document.  He said the entire

04:08  16  thing's confidential.  Its reflects our thinking on it.  And I

04:08  17  said, well, I don't understand how that can be possible.  These

04:08  18  are what you're accusing us, public language of the patent

04:08  19  versus public documents that you've produced to us, and so I

04:08  20  don't see where that is.  He wouldn't do it.

04:08  21      So then I had to go through line by line and grab every

04:08  22  single document that was cited.  I did this with Cody Gartman,

04:08  23  and the only document that I could identify that was

04:08  24  confidential appears one time on two different pages.  It's at

04:08  25  Pages 10 and 11 of Exhibit B of the infringement contentions.

04:08   1   So two pages out of 61 where I could identify anything that

04:08   2   came from a confidential document.  Otherwise there's nothing

04:08   3   in here that reflects any kind of confidential report or RE

04:09   4   report or other internal documentation to Demaray, and,

04:09   5   frankly, for what's been identified and designated as

04:09   6   confidential, I'm not entirely uncertain -- certain why that's

04:09   7   in here anyway because -- and I don't want to get into the

04:09   8   confidentiality of that issue, but it's a 2002 document that

04:09   9   seems to have no bearing at all on Samsung.  So I'm not

04:09   10   entirely certain why that's even in this infringement

04:09   11   contention at all.

04:09   12       But leaving that issue aside, I asked them, can you do a

04:09   13   redacted version of this?  Can we submit this to our clients

04:09   14   without this purported confidential aspect to it?  And they

04:09   15   refused to do that.  They said the entire thing's confidential.

04:09   16   And I honestly just can't understand how that is possible, Your

04:09   17   Honor, because a simple read of this document doesn't reflect

04:09   18   anything that's confidential internal to Demaray or otherwise.

04:09   19   It's not confidential business information.  It's an accusation

04:09   20   as to why we infringe public claims.

04:09   21       THE COURT:  Okay.

04:10   22       MR. WELLS:  Your Honor, this is Maclain Wells.  May I

04:10   23   respond?

04:10   24       MR. RAVEL:  I think -- Maclain, I think it's my turn to

04:10   25   talk before you go again if that's all right on behalf of

04:10 1 Intel.

04:10 2     THE COURT:  Mr. Ravel?

04:10 3     MR. RAVEL:  Your Honor, on behalf of Intel, I'm going to

04:10 4 drop back, and you've heard the detail, and let me drop back

04:10 5 and provide a little higher level background.  This is a case

04:10 6 that has some similarities to DynaEnergetics and to Voip-Pal

04:10 7 versus the world.  We don't have just a standard stay or

04:10 8 transfer situation on the elements.  We have a competing case.

04:10 9     THE COURT:  Mr. Ravel.

04:10 10     MR. RAVEL:  Yes.

04:10 11     THE COURT:  I'm going to have to put y'all on hold for a

04:10 12 couple of minutes.  I just got a note from the jury.  They've

04:10 13 reached a verdict in a case I just tried.

04:10 14     Why don't we do this?  Why don't we break off for now and

04:11 15 resume this phone call at 4:30 and I'll take you up right where

04:11 16 you're at right now?

04:11 17     MR. RAVEL:  Thank you, Judge.

04:11 18     MR. NASH:  Very good, Your Honor.

04:11 19     MR. WELLS:  Yes, Your Honor.

04:12 20     (Hearing adjourned at 4:12 p.m.)

09:01 21     (October 21, 2020, 9:01 a.m.)

09:01 22     MS. MILES:  Telephonic discovery hearing in Civil Action

09:01 23 W-20-CV-634, styled Demaray LLC versus Intel Corporation, and

09:02 24 Civil Action W-20-CV-636, styled Demaray LLC versus Samsung

09:02 25 Electronics Company, Limited, and others.

09:02  1          THE COURT:  Good morning.  If I could hear -- if I could

09:02  2     have folks announce on the record, please, starting with

09:02  3     plaintiff.

09:02  4          MR. MILVENAN:  Your Honor, Rick Milvenan from McGinnis

09:02  5     Lochridge on behalf of Demaray, joined by Ben Hattenbach and

09:02  6     Maclain Wells from the Irell & Manella firm.

09:02  7          THE COURT:  Okay.

09:02  8          MR. RAVEL:  Your Honor, Steve Ravel for Intel.  One riot,

09:02  9     one ranger, one lawyer only, joined by my client John Edwards.

09:02  10         THE COURT:  Okay.

09:02  11         MR. NASH:  Good morning, Your Honor.  Brian Nash here on

09:02  12    behalf of the Samsung defendants.  Also one riot, one ranger.

09:02  13         THE COURT:  Well, all good.  Let me just reboot here for a

09:03  14    second and make sure I understand what's going on.  The

09:03  15    position that the plaintiff wants to take here is that its

09:03  16    infringement contentions are confidential and should be

09:03  17    restricted in who can review them; is that correct?

09:03  18         MR. WELLS:  That is correct, Your Honor.  This is Maclain

09:03  19    Wells.

09:03  20         THE COURT:  Yes, sir.

09:03  21         I thought a lot about this last night and I'm not sure I

09:03  22    understand why I would restrict or make those confidential.  I

09:03  23    know we talked about this in the past.  But, you know, I've

09:03  24    spent a lot of time thinking about this.  I have talked to some

09:03  25    of the other judges who handle a lot of patent cases to make

09:03  1  sure I wasn't missing something.  But tell me why it is that I

09:03  2  would -- other than I fully understand, for example, if there

09:04  3  is something, let's say, that is Samsung source code or

09:04  4  something in the infringement contentions that itself needs to

09:04  5  be restricted, I get that, but tell me why your infringement

09:04  6  contentions should not be made public, because I'm having a

09:04  7  hard time with that.

09:04  8       MR. WELLS:  Yes, Your Honor.  So, again, this is Maclain

09:04  9  Wells.  So let's start with the basic premise of whether

09:04  10  preliminary infringement contentions can be designated by a

09:04  11  plaintiff to be confidential, and other courts in the circuit

09:04  12  have already answered that question.  And the ExitExchange

09:04  13  Corp. v. Casale Media Incorporated, No. 2:10-CV-297 before

09:04  14  Judge Gilstrap answered this question.  And Judge Gilstrap said

09:04  15  very clearly that, yes.  Preliminary infringement contentions

09:05  16  as a general matter may be confidential and designated

09:05  17  according to the protective order by the plaintiff.  And the

09:05  18  Lexis number for that, if it's useful, is 2012 US District

09:05  19  Lexis 40000.

09:05  20       Another example is the Uniloc case that was cited in our

09:05  21  CMC update.

09:05  22       So as a general matter, plaintiffs can designate

09:05  23  preliminary infringement contentions confidential if they

09:05  24  contain confidential information.

09:05  25       Now, in this matter here defendants developed contentions

09:05 1    based upon, one, internal Demaray documents that are marked

09:05 2    attorneys' eyes only under the interim protective order, and

09:05 3    nobody's challenging designation of those internal Demaray

09:05 4    documents.  And, again, Demaray's an active company conducting

09:05 5    research and development in the field of thin films, and those

09:06 6    materials helped inform Demaray's contentions that the

09:06 7    defendants' products practiced the patents.

09:06 8        A second basis --

09:06 9        THE COURT:  So, Mr. Wells, let me just make sure I'm

09:06 10   following you.  And I'm sorry to sound so obtuse.  Is it your

09:06 11   position that -- let me start over.  My general feeling is that

09:06 12   infringement contentions are not going to be confidential.  And

09:06 13   I know you got -- Judge Gilstrap has a case that I'm -- I'm

09:06 14   pretty comfortable that several judges agree with me that --

09:06 15   that as a general matter infringement contentions are not going

09:06 16   to be kept confidential.  Is it your position that there is

09:06 17   information specific to these infringement contentions that

09:07 18   within it that itself needs to be maintained and be kept

09:07 19   confidential?

09:07 20       MR. WELLS:  Yes, Your Honor.  And I would just like to

09:07 21   mention that Judge Gilstrap's not the only judge that has

09:07 22   addressed this.  Other judges have addressed this as well in

09:07 23   other districts.  I can give you additional citations if you

09:07 24   would like them, but just to be clear, that -- Judge Gilstrap

09:07 25   isn't the only judge that's found that infringement contentions

09:07  1   can be confidential to the plaintiff.

09:07  2        Now, regarding your second question -- or your question as

09:07  3   to whether there are materials in here.  Yes.  There are

09:07  4   materials.  So Demaray developed these contentions based upon

09:07  5   its internal analysis and third party reverse engineering

09:07  6   reports.  And, again, the third party reverse engineering

09:07  7   reports are also subject to a contractual obligation to

09:07  8   maintain their confidentiality.  And what Demaray did was they

09:07  9   used these materials to figure out basically a fingerprint for

09:08  10  the technology that it could identify and help inform as to

09:08  11  whether or not these patented processes are being used.  And so

09:08  12  it -- all of Demaray's contentions are -- that analysis

09:08  13  underlies all of Demaray's contentions in this case.  There's

09:08  14  readily available public contentions from Demaray in the

09:08  15  complaint that put forth Demaray -- a public version of

09:08  16  Demaray's infringement allegations.  To the extent these

09:08  17  infringement contentions in the -- submitted to the other side

09:08  18  go beyond that, they're confidential in Demaray's opinion.

09:08  19       Now, the interim protective order puts forth the standard

09:08  20  for what's protectable and it says if a party deems that

09:08  21  information to be confidential, it should be protected, and

09:08  22  Demaray certainly believes that both its internal AEO materials

09:08  23  that have been designated and are referenced in the preliminary

09:09  24  infringement contentions and are relied on in making those

09:09  25  contentions as well as the third party reverse engineering

09:09  1    reports that were relied on and produced in the contentions are

09:09  2    confidential.

09:09  3         Now, Mr. Nash brought up the point yesterday that the

09:09  4    contentions don't contain excerpts of these third party reverse

09:09  5    engineering reports, but of course there's no obligation to

09:09  6    recreate those materials in the chart.  The important part is

09:09  7    that they are -- contentions are based on and reflect that

09:09  8    information.  And protective orders often use the language

09:09  9    referring or relating to confidential information to encompass

09:09  10   just this type of work product.

09:09  11        Your Honor has the VLSI's -- the Intel case before him

09:09  12   that uses exactly that language referring or relating to

09:09  13   confidential information is the information that's protectable.

09:09  14   In this case Demaray relied on the interim protective order.

09:09  15   It has confidential information underlying its contentions, and

09:10  16   it thinks it should be protected.

09:10  17        THE COURT:  Okay.  Let me hear from Mr. Nash.  What is it

09:10  18   that you want to do or not do that is making the plaintiff

09:10  19   unhappy in this case?

09:10  20        MR. NASH:  Your Honor, I think this designation is

09:10  21   entirely improper.  These are accusations that take the public

09:10  22   language of a patent and say that you infringe this patent and

09:10  23   we believe you infringe it based on your product, and that

09:10  24   should only be information that Samsung is able to review

09:10  25   without any restriction and pass on to its suppliers without

09:10  1  any restrictions.

09:10  2       With all due respect to opposing counsel, this somewhat

09:10  3  sounds trumped up in the sense that they're not even contending

09:10  4  that there's something confidential in this document in terms

09:10  5  of like it's like source code or a copy and paste from some

09:10  6  confidential diagram.  What they're saying is that there's an

09:11  7  RE report.  They read an RE report which they've never

09:11  8  produced, we've never seen, no one has it, it's not a produced

09:11  9  document.  They're saying that that alleged RE report is

09:11  10  somehow confidential.  And after they thought about that, then

09:11  11  they could tell that our claims were infringed and that by

09:11  12  virtue of them telling us that our claims are infringed, that's

09:11  13  somehow now confidential?  That doesn't make any sense to me at

09:11  14  all.

09:11  15       I've gone through this multiple times trying to identify

09:11  16  what could possibly be considered confidential in here, and,

09:11  17  Your Honor, I believe we submitted it for in camera review.

09:11  18  You can take a look at it yourself, but as you read this, it

09:11  19  says, here's the claim language.  Here's why we think Samsung

09:11  20  infringes.  And each of those statements is a public -- is

09:11  21  drawn from a public document, and, in fact, all of their

09:11  22  production except for about three documents are public.  Two of

09:11  23  those I think arguably relate to maybe conception.  I'm not

09:11  24  entirely certain, but the one that they're referring to that I

09:12  25  believe they contend is an internal Demaray document and

09:12   1   Mr. Wells said that we don't challenge that designation or

09:12   2   something like that, I don't think that -- I think it's too

09:12   3   early to say whether we do challenge that designation or not.

09:12   4   It looks to be an internal document, but I can't tell for sure.

09:12   5   It's from 2002, though, Your Honor, and I'm not entirely

09:12   6   certain -- I certainly don't think he's contending that that's

09:12   7   the RE report.

09:12   8       And this internal document that purports to have been

09:12   9   created in 2002, 18 years ago, is somehow informing their

09:12   10  present infringement contentions against Samsung.  To me that's

09:12   11  a huge question mark in and of itself, but it's also doubly so

09:12   12  a question as to how that somehow makes these contentions

09:12   13  confidential now in 2020.

09:12   14      That's the -- that's -- ultimately, Your Honor, we

09:12   15  challenge this designation as a starting point because we think

09:12   16  it's improperly made, but at the very least I think that if

09:12   17  they want to maintain this, they need to go through here line

09:12   18  by line and say, this is a -- this statement here is

09:13   19  confidential and this one is -- is not.  I mean, that's how you

09:13   20  would typically do this.  And otherwise, you know, their broad

09:13   21  interpretation of what would constitute confidential would make

09:13   22  the entirety of a case confidential.  Because when I go back

09:13   23  and tell them, you know what?  I've looked at this and Samsung

09:13   24  does not infringe.  That's going to be based on my own internal

09:13   25  review of Samsung's confidential information.  I certainly

16

09:13  1   won't be taking a position, though, that that blanket

09:13  2   contention that I do not infringe or that Samsung does not

09:13  3   infringe is somehow based on -- is somehow a confidential

09:13  4   contention.  The contentions can't be confidential.  They may

09:13  5   be based on confidential information, and you're welcome to

09:13  6   blanket that information confidential.

09:13  7        Typically in a case -- and, in fact, in every case I've

09:13  8   ever had, in my experience, the only confidential information

09:13  9   that's involved in an infringement contention is the

09:13  10  defendant's confidential information.  I've never seen it where

09:14  11  a plaintiff has been able to shroud its contentions in secrecy

09:14  12  by somehow contending that it's based on their quote/unquote

09:14  13  work product.

09:14  14        THE COURT:  Well, we've got -- what we'll do is this.

09:14  15  Josh and I will take a look at the infringement contentions

09:14  16  which we have, and we'll get that -- we'll get that done today

09:14  17  and we'll huddle back up.  I just wanted to -- I just wanted to

09:14  18  check again this morning.  We were at the end of the trial

09:14  19  yesterday and I was a little scattered when you all were

09:14  20  chatting with me.  We'll look at the infringement contentions

09:14  21  and we'll set up something -- a call for tomorrow if we need a

09:14  22  call or we'll just enter a ruling, but essentially the position

09:14  23  plaintiff wants us to take is that they can -- the plaintiff

09:14  24  can maintain marking of confidential on these documents and the

09:14  25  defendants suggest that these infringement contentions should

09:14   1   not be -- there should be no restraint on who the defendant can

09:15   2   show them to.

09:15   3        Is that a fair summary of both sides?

09:15   4        MR. WELLS:  Your Honor, one point, if I could make it,

09:15   5   please.  This is Maclain Wells.

09:15   6        THE COURT:  Sure.  Of course.

09:15   7        MR. WELLS:  Mr. Nash just stated why he thinks this is not

09:15   8   confidential, but he didn't address what use they want to make

09:15   9   of this information, Your Honor.  And, Your Honor, at the meet

09:15   10  and confer on this issue, the defendants said, oh, we need to

09:15   11  have -- be able to give notice to our clients.  Well, we

09:15   12  offered to let them disclose this to Intel and to their

09:15   13  suppliers and to Samsung as long as they only used it for the

09:15   14  purposes of this case, but that's not what they want to do.

09:15   15  They want to take these contentions and they want to submit

09:15   16  them in a third filed case in California to the court in

09:15   17  California to try to get that court to enjoin this Court from

09:15   18  proceeding and they want to submit them to the Patent Office to

09:15   19  support IPRs.  That's an improper use of this information.  So

09:16   20  just to be clear, that's the purpose that they're trying to

09:16   21  achieve.  So with that --

09:16   22        And then in addition, if Your Honor would like the

09:16   23  additional cases, I'm happy to support the -- submit those to

09:16   24  you.

09:16   25        THE COURT:  Mr. Nash?

09:16  1      MR. RAVEL:  Your Honor, before we break, could Intel

09:16  2  respond to that last comment for a couple of minutes?

09:16  3      THE COURT:  I was going to invite Mr. Nash to do it, but

09:16  4  if it's you that should do that, I'm welcome to hear you do it.

09:16  5      MR. RAVEL:  Your Honor --

09:16  6      MR. NASH:  I have a statement, but I'll let Steve go

09:16  7  first.

09:16  8      Go ahead, Steve.

09:16  9      MR. RAVEL:  On the issue of the use to which issue Intel

09:16 10  and Samsung want to put these contentions, there is a customer

09:16 11  suit exception lawsuit in ND Cal that is in the nature of a

09:16 12  coverage lawsuit.  Applied Materials supplies the tools that

09:16 13  are discussed in the infringement contentions.  The smart

09:16 14  lawyers are working a strategy.  It's their job.  It's

09:17 15  appropriate to try it.  It's not appropriate for them to

09:17 16  succeed at it, but they are doing their job trying to muddy the

09:17 17  waters out in their related case out in ND Cal, and the

09:17 18  contested issue out there is, do the allegations relate to the

09:17 19  Applied Material tools or something that Samsung and Intel are

09:17 20  doing, very high level.

09:17 21      What Samsung and Intel would like to do is not only share

09:17 22  these contentions with one representative at each client but

09:17 23  with their supplier Applied Materials, and I think I heard

09:17 24  Mr. Wells say that's okay.  And then subject to appropriate

09:17 25  sealing or other protection that Applied and its outside

| | | |
|---|---|---|
| 09:17 | 1 | counsel in ND Cal get to use those to the extent appropriate to |
| 09:18 | 2 | deal with the contested issues in ND Cal, that is overlap. |
| 09:18 | 3 | I, like Mr. Nash, have very little experience with |
| 09:18 | 4 | contentions being made confidential, and I'd like to spend one |
| 09:18 | 5 | second distinguishing the case they mentioned.  That is a |
| 09:18 | 6 | throwaway piece of dicta from Judge Gilstrap that says under |
| 09:18 | 7 | certain circumstances contentions can be confidential, but the |
| 09:18 | 8 | actual holding in that case was that it allowed codefendants to |
| 09:18 | 9 | see the contentions against other codefendants.  There's about |
| 09:18 | 10 | four words of dicta that they're hanging their hat on here. |
| 09:18 | 11 | And just what's fair is for Intel and Samsung's indemnitor to |
| 09:18 | 12 | be able to use what's available to them to fight this overlap |
| 09:18 | 13 | issue out in ND Cal. |
| 09:18 | 14 | I think that our first line position is that they're not |
| 09:19 | 15 | protected at all, but I think the other side tried to muddy the |
| 09:19 | 16 | waters about the extent to which we want to use them, and it is |
| 09:19 | 17 | our clients on a need to know basis, Applied on a need to know |
| 09:19 | 18 | basis, and Applied's outside lawyers on a need to know basis, |
| 09:19 | 19 | which is about as protected as I've ever seen contentions be, |
| 09:19 | 20 | Judge. |
| 09:19 | 21 | And if Mr. Nash wants to add, you know, I'm just a dog |
| 09:19 | 22 | watching TV in these kind of cases and he's an engineer.  So |
| 09:19 | 23 | I'd be happy to -- for him to backstop me there. |
| 09:19 | 24 | THE COURT:  Okay.  Mr. Nash? |
| 09:19 | 25 | MR. NASH:  Yes, Your Honor.  I just wanted to point out |

| | | |
|---|---|---|
| 09:19 | 1 | that I think the issue to which Mr. Wells just spoke is a |
| 09:19 | 2 | little bit of the cart getting ahead of the horse.  I think the |
| 09:19 | 3 | first predicate question has to be, is this a proper |
| 09:19 | 4 | designation or not?  I certainly would be willing to address |
| 09:19 | 5 | Your Honor.  If Your Honor agrees that this is a proper |
| 09:20 | 6 | designation and these should be treated confidential, I'd be |
| 09:20 | 7 | happy to address the secondary question that follows that, |
| 09:20 | 8 | which is, who can see them and for what purpose?  But I don't |
| 09:20 | 9 | want to busy Your Honor's morning.  I know you've got a lot of |
| 09:20 | 10 | things on the docket today.  So I was planning to just table |
| 09:20 | 11 | that issue until you've had an opportunity to determine whether |
| 09:20 | 12 | or not the designation's proper.  Would you like me to address |
| 09:20 | 13 | it now, Your Honor, or should we wait? |
| 09:20 | 14 | THE COURT:  No.  Go ahead, please. |
| 09:20 | 15 | MR. NASH:  So I agree with what Mr. Ravel was articulating |
| 09:20 | 16 | which is that to the extent we do reach a confidentiality |
| 09:20 | 17 | determination, at a minimum in what we've asked opposing |
| 09:20 | 18 | counsel to allow us to do is to share the contentions |
| 09:20 | 19 | themselves.  We asked them to do a redacted version.  They |
| 09:20 | 20 | refused.  We said, well, we can't inform our client as to where |
| 09:20 | 21 | the accusations are, how to look for documents, how to |
| 09:20 | 22 | determine what might be relevant prior art, given how these |
| 09:20 | 23 | claims are being construed, and importantly, you know, what |
| 09:21 | 24 | type of indemnity relationships might be involved because as I |
| 09:21 | 25 | don't think it's a confidential statement to make, these are |

09:21   1   directed exclusively at products that Samsung and Intel don't

09:21   2   make.  These are tools that they use.  And there's nothing

09:21   3   specific in these contentions about anything that Samsung or

09:21   4   Intel does with those tools other than that they have them.

09:21   5   The tools are made by Applied, and we need to be able to share

09:21   6   those with Applied because they're the ones that have that

09:21   7   information about, you know, what's being accused here with

09:21   8   respect to infringement.  So we need to be able to pass that on

09:21   9   to Applied and, importantly, to Applied's attorneys as well.

09:21   10   And that's really the simple -- the simple issue of what we

09:21   11   want to be able to do with these.

09:21   12       I will say that with respect to the first issue the

09:21   13   predicate question of answering whether or not these are

09:21   14   properly designated, it may assist the Court to have the

09:21   15   documents that are cited as part of these contentions, and I'd

09:22   16   be happy to send those for in camera review as well.  We

09:22   17   forwarded the contentions, but they reference documents.  It's

09:22   18   not apparent in anything on those sort of contentions

09:22   19   themselves whether those documents are public or not, but the

09:22   20   documents would reveal that information.  So when, for example,

09:22   21   it says like a Bates range, you'll pull them up and they'll be

09:22   22   like -- it'll be a public brochure that Applied Materials makes

09:22   23   available on its website.  So if it would help Your Honor, I

09:22   24   would be happy to -- I think Cody Gartman would be happy to set

09:22   25   up an FPT link to provide documents for your inspection as

09:22   1   well.

09:22   2          THE COURT:  Okay.

09:22   3          MR. WELLS:  And, Your Honor, could I briefly respond?

09:22   4   This is Maclain Wells.

09:22   5          THE COURT:  Mr. Wells, you've got eight minutes.  So...

09:22   6          MR. WELLS:  Thank you.  Thank you, Your Honor.

09:22   7          So, first, with regard to Mr. Ravel's comments on the

09:22   8   cases and the case law, Judge Gilstrap's opinion is not a

09:23   9   throwaway opinion.  In that case he actually upheld the

09:23  10   confidentiality designation of the preliminary infringement

09:23  11   contentions, but he said that you could share them for the

09:23  12   purposes of that case with the other defendants, and that's

09:23  13   something that's entirely consistent with what we're

09:23  14   suggesting.

09:23  15          In addition, that case has been cited by other subsequent

09:23  16   cases for exactly this proposition, including the Uniloc case

09:23  17   cited in the CMC update that was submitted last Thursday.  So

09:23  18   this isn't a throwaway or one-off decision.

09:23  19          Regarding Mr. Nash's points that there's nothing about

09:23  20   what defendants do with these tools that's accused, one of the

09:23  21   patents is a method patent that says using these reactors in a

09:23  22   certain way.  And Samsung and Intel are the ones that do that.

09:23  23   So that's just not an accurate statement.

09:23  24          Now, we believe that these materials are protected, and

09:23  25   that's the standard that's put forth in the interim protective

09:24  1   order under which we were operating at the time this was

09:24  2   produced, and that interim protective order says explicitly

09:24  3   that they shall be used for this case and this case alone.

09:24  4   That's -- that is the interim protective order.  Now, if the

09:24  5   other side wants to show them to their supplier and their

09:24  6   supplier agrees to be bound by the confidentiality obligations

09:24  7   as well as the use limitations in the interim protective order,

09:24  8   we're okay with that.  If they want to disseminate it within

09:24  9   their clients, again, subject to those limitations on a need to

09:24  10  know basis and for the use in this case, we're okay with that.

09:24  11  But the Northern District of California has its own patent

09:24  12  rules, its own disclosures.  It's going to handle its own case.

09:24  13  And it's inappropriate to leverage this in the Northern

09:24  14  District of California to the prejudice of our client and

09:24  15  change the interim protective order after the fact.

09:25  16      MR. NASH:  Your Honor, this is Brian Nash.  I -- in the

09:25  17  four minutes that remain, could I briefly respond to the last

09:25  18  statement that Mr. Wells made?

09:25  19      THE COURT:  Sure.  There are a lot of people who are

09:25  20  waiting to be sentenced I'm sure who won't mind if I'm a minute

09:25  21  or two late.

09:25  22      MR. NASH:  I'm so sorry about that, Your Honor.  I just --

09:25  23      THE COURT:  No.  I'm kidding.  They will -- they're good.

09:25  24  They'll wait.

09:25  25      MR. NASH:  I'm so sorry, Your Honor.

24

09:25 1      There are matters of life and death at issue.  I

09:25 2  appreciate that.  Much more important than patent cases.

09:25 3      I just want to point out what's improper here is in the

09:25 4  Northern District of California the plaintiff is trying to take

09:25 5  an inconsistent position with what it's taking here.  I'm not

09:25 6  involved in the Northern District of California case.  I don't

09:25 7  represent Applied.  I honestly don't know the specifics, but

09:25 8  I've looked enough at the public pleadings to understand that

09:25 9  what they're trying to do in that case is oppose the relief

09:25 10 requested by Applied by saying, oh, well, that's not

09:26 11 necessarily what's going on in the Western District of Texas,

09:26 12 Your Honor.  And then they clouded everything in secrecy here

09:26 13 in the Western District of Texas by designating it confidential

09:26 14 improperly so so that there's no ability for the Applied

09:26 15 attorneys to respond to that with the information here and that

09:26 16 judge isn't able to know what's going on here.  If this -- if

09:26 17 we want to talk about what's inappropriate, it's trying to

09:26 18 cloud this case in secrecy so that they can take an

09:26 19 inconsistent position in the Northern District of California.

09:26 20      That's all I had, Your Honor.

09:26 21      THE COURT:  Anything else, gentlemen?

09:26 22      MR. MILVENAN:  Yes, Your Honor.  This is Rick Milvenan.

09:26 23 If I could just take one minute to point out that Ms.

09:26 24 Santasawatkul gave us a Markman date and a trial date and we

09:26 25 submitted a schedule last Friday and we would like to see that

09:26    1    schedule get entered.

09:26    2         THE COURT:  Why don't you just ping Josh and make sure he

09:26    3    does it?

09:27    4         MR. MILVENAN:  Will do.

09:27    5         THE COURT:  Yeah.  I'm surprised he didn't -- maybe

09:27    6    just -- we've got a lot of stuff going on, but just -- you

09:27    7    know, double-check with him and we'll get it ordered.  I'm

09:27    8    sorry.  We'll get it entered.

09:27    9         MR. NASH:  Your Honor, the parties are still meeting and

09:27   10    conferring about that.  There's no agreement on the schedule at

09:27   11    this point.  That's why this hasn't been submitted to Your

09:27   12    Honor yet.  We're still talking.

09:27   13         THE COURT:  It's not been submitted?

09:27   14         MR. NASH:  It has not.

09:27   15         MR. MILVENAN:  It was sent to Hannah on Friday, and the

09:27   16    dates for the Markman and trial date were given to us by the

09:27   17    Court.

09:27   18         MR. NASH:  We were asked to meet and confer about a

09:27   19    schedule.  I think we're still in the process of doing that.

09:27   20         MR. RAVEL:  And just to be a little more specific, Judge,

09:27   21    what sort of interim relief we might need in terms of motions

09:27   22    to transfer and accused product discovery, now that we're on

09:28   23    the 12th day of trying to get infringement contentions that we

09:28   24    can actually use, the plaintiffs are anxious to try to

09:28   25    characterize the defendants as trying to delay this case.

| | | |
|---|---|---|
| 09:28 | 1 | Nothing could be further from the truth.  It's more a matter of |
| 09:28 | 2 | what would be fair in terms of interim deadlines, given how |
| 09:28 | 3 | hard we're having to work to get contentions that we can use. |
| 09:28 | 4 | I think that Mr. Nash and I have a pretty good record of as |
| 09:28 | 5 | defendants not standing in the way of cases getting resolved, |
| 09:28 | 6 | and that's -- to the extent that there's an implication to the |
| 09:28 | 7 | contrary, I just wanted to clear that up a little bit. |
| 09:28 | 8 | THE COURT:  Well, let's do this.  Let's do this.  If we do |
| 09:28 | 9 | not have -- Mr. Milvenan, if this is an agreed order for us to |
| 09:29 | 10 | sign, we'll be happy to do it.  If it's not and if you all |
| 09:29 | 11 | don't have an agreed scheduling order in place -- not in place, |
| 09:29 | 12 | but if you all cannot come to an agreement on everything that |
| 09:29 | 13 | needs to be agreed to by the end of this week, Mr. Milvenan, |
| 09:29 | 14 | let Josh know and I will set another scheduling conference -- |
| 09:29 | 15 | another scheduling conference and I'll take up any disputes you |
| 09:29 | 16 | all have about any issues and we'll get an order entered next |
| 09:29 | 17 | week. |
| 09:29 | 18 | So I've got a trial that starts Monday, but I can find a |
| 09:29 | 19 | time somewhere in -- you know, somewhere Monday, Tuesday or |
| 09:29 | 20 | Wednesday and we'll set a hearing and we'll just go through |
| 09:29 | 21 | everything that's in dispute and we'll get it all worked out if |
| 09:29 | 22 | y'all can't.  So... |
| 09:29 | 23 | MR. MILVENAN:  Thank you, Your Honor. |
| 09:29 | 24 | THE COURT:  You bet. |
| 09:30 | 25 | Anything else? |

```
09:30   1        MR. NASH:  No.  That's it, Your Honor.

09:30   2        MR. RAVEL:  Thank you, Your Honor.

09:30   3        MR. WELLS:  Thank you, Your Honor.

09:30   4        THE COURT:  Take care.  Bye.

09:30   5        (Hearing adjourned at 9:30 a.m.)

        6

        7

        8

        9

       10

       11

       12

       13

       14

       15

       16

       17

       18

       19

       20

       21

       22

       23

       24

       25
```

1  UNITED STATES DISTRICT COURT )

2  WESTERN DISTRICT OF TEXAS     )

3

4       I, Kristie M. Davis, Official Court Reporter for the

5  United States District Court, Western District of Texas, do

6  certify that the foregoing is a correct transcript from the

7  record of proceedings in the above-entitled matter.

8       I certify that the transcript fees and format comply with

9  those prescribed by the Court and Judicial Conference of the

10 United States.

11      Certified to by me this 21st day of October 2020.

12
                              /s/ Kristie M. Davis
13                            KRISTIE M. DAVIS
                              Official Court Reporter
14                            800 Franklin Avenue
                              Waco, Texas 76701
15                            (254) 340-6114
                              kmdaviscsr@yahoo.com
16

17

18

19

20

21

22

23

24

25