**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| DEMARAY LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. (A KOREAN COMPANY), SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR LLC,<br><br>                    Defendants. | CASE NO. 6:20-cv-00636-ADA<br><br>**JURY TRIAL DEMANDED**<br><br>████████████████<br><br>**PUBLIC REDACTED VERSION** |

<u>**SAMSUNG ELECTRONICS' MOTIONS FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT RELATING TO EXTRATERRITORIALITY**</u>

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION .................................................................................................. 1

II.    LEGAL STANDARD .......................................................................................... 2

III.   Statement of Undisputed Material Facts .............................................................. 4

     A.    Samsung Buys the Accused Chambers from Applied Outside of the United
         States and Applied Exports Them to Korea ............................................... 4

     B.    Most Samsung Products that Comprise Demaray's Damages Base Are
         Manufactured Outside of the United States ............................................... 7

     C.    Samsung's Pre-Suit Interactions with Demaray ...................................... 9

IV.   ARGUMENT ...................................................................................................... 10

     A.    Summary Judgment of Non-Infringement of the '276 Patent under
         § 271(f) Should Be Granted ...................................................................... 10

         1.    Samsung's Extraterritorial Conduct Cannot Support Infringement
             Under § 271(f)............................................................................ 11

         2.    Samsung's Purchase of Ancillary Products Such as Substrates,
             Wires, Sputtering Targets, and Replacement Parts Fail to Give
             Rise to Infringement under § 271(f)(1)...................................... 13

         3.    Demaray Cannot Show that Samsung had Knowledge of
             Infringement as Required under Section 271(f)(2) as a Matter of
             Law ............................................................................................ 15

     B.    Demaray's Use of Samsung's DRAM and Processors Manufactured
         Outside the U.S. as Its Royalty Base for Alleged § 271(f) Infringement
         Fails as a Matter of Law............................................................................ 17

     C.    Samsung's Use of the Accused Chambers Outside the U.S. Does Not
         Infringe the Asserted Patents under § 271(a) as a Matter of Law ........ 19

     D.    Summary Judgment of Non-Infringement of the '657 Patent under
         § 271(g) Should Be Granted .................................................................... 20

V.    CONCLUSION.................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aro Mfg. Co. v. Convertible Top Replacement Co., Inc.*,
 377 U.S. 476 (1964)................................................................................................15

*Bio–Technology Gen. Corp. v. Genentech, Inc.*,
 80 F.3d 1553 (Fed. Cir. 1996)................................................................................21

*Blauvelt v. United States*,
 No. 3:17-CV-2855-K-BH, 2019 WL 3359235 (N.D. Tex. June 25, 2019)
 ......................................................................................................................2, 13, 14, 17

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986)....................................................................................3, 13, 14, 17

*Deepsouth Packing Co. v. Laitram Corp.*,
 406 U.S. 518 (1972)..................................................................................................3

*EEOC v. Arabian American Oil Co.*,
 499 U.S. 244 (1991)..................................................................................................4

*Eli Lilly & Co. v. Am. Cynamid Co.*,
 66 F. Supp. 2d 924 (S.D. Ind. 1999)......................................................................22

*Eli Lilly and Co. v. American Cyanamid Co.*,
 82 F.3d 1568 ......................................................................................................4, 21

*Flexsys Am. LP v. Kumho Tire U.S.A., Inc.*,
 726 F. Supp. 2d 778 (N.D. Ohio 2010)..................................................................21

*Holmes v. SIPC*,
 503 U.S. 258 (1992)................................................................................................12

*Life Techs. Corp. v. Promega Corp.*,
 580 U.S. 140 (2017)......................................................................................14, 15, 17

*Microsoft Corp. v. AT & T Corp.*,
 550 U.S. 437 (2007)..................................................................................3, 10, 13, 19

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
 476 F. Supp. 2d 1143 (N.D. Cal. 2007), *clarified on denial of reconsideration*,
 No. C 04-2000 CW, 2007 WL 1108615 (N.D. Cal. Apr. 11, 2007).......................17

*Novartis Corp. v. Ben Venue Lab'ys, Inc.*,
 271 F.3d 1043 (Fed. Cir. 2001)................................................................................2

*NTP, Inc. v. Rsch. In Motion, Ltd.*,
 418 F.3d 1282 (Fed. Cir. 2005) *abrogated on other grounds by Zoltek Corp. v.
 United States*, 672 F.3d 1309 (Fed. Cir. 2012) (en banc) ................................3, 19

*Pellegrini v. Analog Devices, Inc.*,
 375 F.3d 1113 (Fed. Cir. 2004) ...........................................................................3

*Rite-Hite Corp. v. Kelley Co.*,
 56 F.3d 1538 (Fed. Cir. 1995) ............................................................................18

*Simo Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
 396 F. Supp. 3d 323 (S.D.N.Y. 2019) .................................................................18

*Stickle v. Heublein, Inc.*,
 716 F.2d 1550 (Fed. Cir. 1983) ...........................................................................17

*Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*,
 895 F.3d 1304 (Fed. Cir. 2018) ...........................................................................20

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
 No. 4:09-CV-1827, 2012 WL 2568167 (S.D. Tex. June 29, 2012) ......................15

*WesternGeco LLC v. ION Geophysical Corp.*,
 138 S.Ct. 2129 (2018) .............................................................................. *passim*

*Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*,
 No. 3:17-CV-01118-BEN-BLM, 2019 WL 4452986 (S.D. Cal. Sept. 16,
 2019) ...........................................................................................................15, 16

**Statutes**

35 U.S.C. § 271 ...................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 56(a) ......................................................................................2

## I.    INTRODUCTION

Demaray's infringement and damages theories in this case far exceed the territorial bounds of United States patent law.  The bulk of the billions in damages Demaray seeks from Samsung stems from Samsung's purchase and use of the Accused Chambers[1] outside of the United States. ██ of Samsung's DRAM products and approximately ██ percent of its processor products that form Demaray's damages base in this case were manufactured abroad.[2]  Samsung purchases the majority of the Accused Chambers outside of the United States and uses them to manufacture products outside of the United States.  Samsung moves for partial summary judgment that its extraterritorial conduct does not constitute infringement of the Asserted Patents.[3]

Demaray exceeds the bounds of 35 U.S.C. § 271(f) by seeking to hold Samsung liable for infringement of the '276 patent for entirely extraterritorial conduct: Samsung's purchase of the Accused Chambers from Applied outside of the United States.  Samsung is not the one who "supplies or causes to be supplied in or from the United States" the accused chamber components, which is a statutory requirement for infringement under this subsection.  Demaray has failed to

---

[1] "Accused Chambers" means ████████████████████████ products sold by third party Applied Materials, which are chambers used in a few of the thousands of steps in the semiconductor manufacturing process to deposit a layer of metal ions onto a semiconductor wafer.

[2] This motion does not cover Samsung processor products manufactured using the Accused Chambers in the United States, which comprise about ██ of the revenue base that Demaray uses for processors manufactured using the Accused Chambers.

[3] Demaray accuses Samsung of infringing U.S. Patent Nos. 7,544,276 (the '276 patent) and 7,381,657 (the '657 patent) (collectively, the "Asserted Patents").  The '657 patent is a method patent and Demaray accuses Samsung of infringement for its use of Applied's ████████ to manufacture processor products outside the United States under 35 U.S.C. §§ 271(a), (b), (c), and (g). The '276 patent is an apparatus patent and Demaray accuses Samsung of infringement for its use of Applied's ████████████████████████ chambers to manufacture DRAM and processor products outside the United States under 35 U.S.C. §§ 271(a), (b), (c) and (f). Samsung uses ████████████████████████ those chambers and the products manufactured using those chambers are not at issue in this motion.

proffer any evidence that **Samsung** conducts any allegedly infringing activity in the United States. Indeed, Samsung sends most of its purchase orders to Applied's ███████████ and has no role in where the chambers are manufactured or exported from or the manner in which Applied packages them for shipment.  Demaray's other theories to capture Samsung's extraterritorial conduct under § 271(f) are similarly unsupported.

Demaray also seeks to cover the importation of Samsung's products manufactured abroad under § 271(a), but that statutory subjection only covers the importation of the "patented invention," which is alleged by Demaray to be the Accused Chambers, not Samsung's products.

Finally, Demaray exceeds the scope of § 271(g) by seeking to hold Samsung liable for infringement of the '657 patent for the alleged extraterritorial use of the patented method in the production of processors where the Accused Chambers are used in only a few process steps that are followed by thousands of steps that materially change the products.

Demaray's overreach should not be permitted.  For the reasons set forth below, Samsung respectfully requests that the Court grant its motion for partial summary judgment of no infringement for its conduct outside of the United States.

## II.    LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "has the initial responsibility of identifying the legal basis of its motion, and … pointing to … the absence of a genuine issue of material fact."  *Novartis Corp. v. Ben Venue Lab'ys, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).  Then "the burden shifts to the nonmovant to designate specific facts showing that there is a genuine issue for trial."  *Id.*  The "moving party can also meet its summary judgment burden by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case."  *Blauvelt v. United States*, No. 3:17-CV-2855-K-BH, 2019 WL

3359235, at * 2 (N.D. Tex. June 25, 2019) (internal quotation omitted).  If "a party … fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof … [t]he moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (cleaned up).

It is the general rule under U.S. patent law that no infringement occurs when a patented product is made and sold in another country.  *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 441 (2007).  35 U.S.C. § 271 (a), (f) and (g) provide narrow exceptions to that general rule.  Section 271(a) imposes liability for infringement on anyone who "imports into the [U.S.] any patented invention." 35 U.S.C.§ 271(a).  "Section 271(a) is only actionable against patent infringement that occurs within the [U.S.]." *NTP, Inc. v. Rsch. In Motion, Ltd.*, 418 F.3d 1282, 1313 (Fed. Cir. 2005) *abrogated on other grounds by Zoltek Corp. v. United States*, 672 F.3d 1309, 1323 (Fed. Cir. 2012) (en banc).

Section 271(f) was enacted in the wake of the United States Supreme Court's decision in *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518 (1972), in which the Court acknowledged that unauthorized manufacturers of patented products could avoid liability under the then-existing law by manufacturing the unassembled components of those products in the United States and then shipping them abroad for assembly.  *Pellegrini v. Analog Devices, Inc.*, 375 F.3d 1113, 1116 (Fed. Cir. 2004).  Section 271(f) infringement, both subsections (1) and (2), requires that the party accused of infringement "supplies or causes to be supplied in or from the United States" either "all or a substantial portion of the components of a patented invention" (§ 271(f)(1)) or "any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce" (§ 271(f)(2)).  Because "§ 271(f) is an exception to the general rule that our patent law does not apply extraterritorially," it should be

construed narrowly to prevent "unintended clashes between our laws and those of other nations…." *WesternGeco LLC v. ION Geophysical Corp.*, 138 S.Ct. 2129, 2136 (2018) (citing *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991)).

"The conduct that [§ 271(f)] regulates—*i.e.*, its focus—is the domestic act of supplying in or from the [U.S.]." *Id.* at 2138 (cleaned up).  § 271(f) protects against domestic entities who export components from the U.S.  *Id.* (cleaned up).  To obtain damages under § 284 a party must show infringement, and the focus of the infringement under § 271(f) is on the act of exporting components from the U.S.  *Id.*

Infringement under § 271(g) is limited to importing, offering to sell, selling, or using within the U.S. "a product which is made by a process [performed abroad that is] patented in the United States" unless "(1) it is materially changed by subsequent processes"; or (2) it becomes a "trivial and nonessential component of another product."  35 U.S.C. § 271(g); *Eli Lilly and Co. v. American Cyanamid Co.*, 82 F.3d 1568, 1572.  The "statute permits the importation of an item that is derived from a product made by a patented process as long as that product is 'materially changed' in the course of its conversion into the imported item."  *Id.*

## III.   STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.   Samsung Buys the Accused Chambers from Applied Outside of the United States and Applied Exports Them to Korea

Samsung purchases the Accused Chambers from the manufacturer, Applied.[4]  *See, e.g.*, Ex. 1 (SAM20cv636-0005966); Ex. 2 (SAM20cv636-0005970); Ex. 3 (SAM20cv636-0005982);

---

[4] Samsung Electronics Co., Ltd. purchases the Accused Chambers for use in Samsung's ███ fabrication facilities.  *See, e.g.*, Ex. 1 (SAM20cv636-0005966); Ex. 2 (SAM20cv636-0005970); Ex. 3 (SAM20cv636-0005982); Ex. 4 (SAM20cv636-0005988); Ex. 5 (2022-12-22 H. Choi Tr.) at 54:12–55:12; 55:18–56:11.  Samsung Electronics Co., Ltd. also purchases Applied chambers for use in its ███ fabrication facilities; those chambers are not at issue in this case.

Ex. 4 (SAM20cv636-0005988); Ex. 5 (2022-12-22 H. Choi Tr.) at 50:7–11 (testifying that Applied

is the manufacturer of the ████████████████ Samsung orders the Accused Chambers

by ████████████████████████████. Ex. 5 (2022-12-22 H. Choi Tr.) at

50:19–51:16. Samsung sends most of its purchase orders to Applied's ████████████ *See, e.g.*,

Ex. 1 (SAM20cv636-0005966); Ex. 2 (SAM20cv636-0005970); Ex. 3 (SAM20cv636-0005982);

Ex. 4 (SAM20cv636-0005988); *see also* Ex. 5 (2022-12-22 H. Choi Tr. at 50:19–53:8). Out of ██

purchase orders at issue in this case, ███ were placed with ██████████. *See, e.g.*, Ex. 1

(SAM20cv636-0005966); Ex. 2 (SAM20cv636-0005970); Ex. 3 (SAM20cv636-0005982); Ex. 4

(SAM20cv636-0005988); *see also* Ex. 5 (2022-12-22 H. Choi Tr. at 50:19–53:8). Only ███

orders at issue were placed with Applied U.S., but for those, ████████████████████

████████████████████████████████ Ex. 6 (SAM20cv636-0005974);

Ex. 7 (SAM20cv636-0005978); Ex. 8 (SAM20cv636-0006352); Ex. 5 (2022-12-22 H. Choi Tr.)

at 54:12–55:12; 55:18–56:11. The remaining ███ orders (out of the ██ at issue) were for

chambers that were made in the U.S. and shipped to Samsung ██████ where they remain. Ex.

9 (SAM20cv636-0460933); Ex. 10 (SAM20cv636-0460938); Ex. 11 (SAM20cv636-

0460943). Those chambers are not subject to § 271(f) because there was no combination "outside

the United States" and those chambers are not at issue in this motion.

Applied manufactures and assembles the Accused Chambers in its ████████ Ex. 12

(2023-03-10 Deane Tr.) at 130:24–133:7, 134:4–16, 141:19–143:2 (explaining that ████████

████████████████████████████; Ex. 5 (2022-12-22 H. Choi Tr.) at 53:22–

54:7. ██████ then exports the Accused Chambers to Samsung in █████ *Id.* (2022-12-22 H. Choi

Tr.) at 54:12–55:12; 55:18–56:11 (testifying that Applied manufactures the Accused Chambers

and then they are exported to Samsung's ██████████████████████). Once the

Accused Chambers arrive in Korea, ██████████████████████████. Ex. 12 (2023-03-10 Deane Tr.) at 88:10–89:20 (Applied installs the chambers in mainframe tools at customer facilities). Demaray has not presented any evidence that Samsung controls or directs where Applied manufactures the Accused Chambers, where they are exported from, or the manner in which they are packaged for shipping. *See* Ex. 13 (Giapis Op. Rpt.) § XVI.E.a; Ex. 14 (Demaray's 6th Suppl. Interrog. Resp.) at 41–44; Ex. 15 (2023-11-10 Giapis Tr.) at 81:16–85:21 (it is ████████████ where to manufacture the Accused Chambers).

Samsung also buys spare parts, such as ██████████████████████████ ██████ Samsung uses these replacement parts in the Accused Chambers as well as in other chambers purchased from Applied. Those spare parts are ████████████████████████ ██████ *See, e.g.*, Ex. 16 (AMAT-DEM_0005421) at Rows 37, 82, and 160. Demaray has not identified any evidence that Samsung controls or directs where Applied manufactures the spare parts, where they are shipped from, or manner in which they are shipped. *See* Ex. 13 (Giapis Op. Rpt. § XVI.E.a); Ex. 14 (Demaray's 6th Suppl. Interrog. Resp.) at 41–44. Samsung also buys ██████████████████ from third parties to use in its chambers,[5] (Accused Chambers or non-accused chambers), and Demaray has not identified which, if any, of those products are exported from the U.S. or any evidence that Samsung has any control over that process. *Id.* Samsung buys ██████████████ from ████████████████████████████████████ ██████████████. Ex. 18 (Bravman Reb. Rpt.) ¶¶ 1818–1826.

---

[5] ████████████████ are used in physical vapor deposition chambers to deposit a thin film of metal ions on a semiconductor wafer. *See* Ex. 17 (Schoettelkotte Reb. Rpt.) ¶ 26.

**B.     Most Samsung Products that Comprise Demaray's Damages Base Are Manufactured Outside of the United States**

Demaray's damages base comprises worldwide revenue based on sales of Samsung DRAM and processor products manufactured using the Accused Chambers.[6]  Ex. 17 (Schoettelkotte Reb. Rpt.) ¶ 297; Ex. 19 (Chandler Supp. Rpt.) ¶¶ 3–5; Ex. 20 (Neels Reb. Rpt.) ¶ 63, Table 1 (showing that ███ of Samsung's Accused Chambers used in producing ███ are located in Korea); Ex. 21 (Samsung's 23rd Suppl. Interrog. Resp.) at 21–25; Ex. 18 (Bravman Reb. Rpt.) ¶¶ 474–477. Of 188 Accused Chambers, ██████ are located in Korea:

**Table 1: Location of Accused Chambers**

| Accused Chambers | Chamber Location | No. used for Processors | No. used for DRAM |
|---|---|---|---|
| ████ | Korea | █ | █ |
| | Korea | | |
| | Korea | | |
| ███ | Korea | █ | █ |
| | United States[7] | █ | █ |

For Samsung's DRAM products, it is undisputed that ███ of the damages base comprises revenue from sales of products manufactured ████████ Ex. 17 (Schoettelkotte Reb. Rpt.) ¶¶ 297–298.  For Samsung's processor products, ████ of the damages base comprises revenue from sales of products manufactured ███████ *Id.*; *see also* Ex. 20 (Neels Reb. Rpt.) ¶ 63, Table 1; Ex. 21 (Samsung's 23rd Suppl. Interrog. Resp.) at 21–25; Ex. 18 (Bravman Reb. Rpt.) ¶¶ 474–477.  For sales of products manufactured by Samsung outside of the U.S., Demaray asserts

---

[6] For the '276 patent, ████ of Demaray's damages base comes from products manufactured inside the U.S.  Ex. 17 (Schoettelkotte Reb. Rpt.) ¶¶ 297–298.  For the '657 patent, ████ of Demaray's damages base comes from products manufactured inside the U.S.  *Id.* ¶ 299. As addressed in Samsung's concurrently filed *Daubert* motion, Samsung disputes that it is proper for Demaray to use the revenues from products manufactured using the Accused Chambers as the damages base.

[7] The ████████████████████ are not at issue in this motion.

infringement of the '276 patent under 35 U.S.C. §§ 271(a), (b), (c) and (f) by virtue of Samsung's use of the ██████████████████████████████ chambers outside the U.S. *See, e.g.*, Ex. 13 (Giapis Op. Rpt.) §§ XVI.A, XVI.E.a.; Ex. 22 (Chandler Op. Rpt.) ¶¶ 28–30. These Accused Chambers are the only products alleged to be covered by the '276 patent, which is an apparatus patent. Ex. 18 (Bravman Reb. Rpt.) ¶¶ 153–154. Samsung's DRAM and processor products themselves are not alleged to be covered by the '276 patent. *Id.* ¶ 155.

Demaray likewise includes revenue from sales of Samsung products manufactured outside of the U.S. in its damages base for Samsung's alleged infringement of the '657 patent, a method patent, asserting that Samsung infringes that patent under 35 U.S.C. §§ 271(a), (b), (c), and (g) by virtue of its use of the ████████████. Ex. 22 (Chandler Op. Rpt.) ¶¶ 28–30); Ex. 13 (Giapis Op. Rpt.) §§ XVI.D, XVI.E.b. Demaray's damages base for the '657 patent is comprised ████ ████████████████████████████████████████████████████████████ ████████████████ Ex. 17 (Schoettelkotte Reb. Rpt., ¶ 299); Ex. 23 (Sullivan Updated Calculations) Attachment D-6a; Ex. 22 (Chandler Op. Rpt.) ¶ 437.

Samsung's processor products are manufactured in a process that takes ████████████ ████████████████████████████ Ex. 18 (Bravman Reb. Rpt.) ¶ 1843. The handful of steps performed using the Accused Chambers happen ████████████████████████████ ████████████████████████████████ *See id.* at 1844; Ex. 15 (2023-11-10 Giapis Tr.) at 110:11–111:24, 113:20–116:3 (there are ████████████████████████████ ████████████████████████████████ that use Accused Chambers). Indeed, the ██████████████ by the Accused Chambers is subsequently ████████████████. Ex. 12 (2023-03-10 Deane Tr.) at 91:20–93:15 (████████ used to apply ████████████████████████ and then ████████████████████████████).

As an example, the process flow for Samsung's ██████ node[8] includes only ██████ deposition steps using the accused ████████████ chamber, which are followed by nearly ██████ additional steps.  Ex. 18 (Bravman Reb. Rpt.) ¶¶ 1843–1844.  These steps include ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████  *Id.*; *see also* Ex. 24 (2022-12-20 J. Choi Tr.) at 66:13–15; Ex. 25 (2022-11-29 D. Anderson Tr.) at 34:11–24; Ex. 26 (2023-06-09 J. Kim Tr.) at 86:11–87:5.  Multiple non-accused chambers are used in the manufacturing process.  *Id.*; *see also* Ex. 27 (SAM20cv636-0489229) at -9244; Ex. 28 (SAM20cv636-0783760) at -3776.

### C.    Samsung's Pre-Suit Interactions with Demaray



██████████████████████████████████████.  *See* Ex. 18 (Bravman Reb. Rpt.) ¶¶ 1834–1836; Ex. 29 (SAM20cv636-0489762).  The Asserted Patents are listed in the presentation as they related to ██████████████████ manufacture.  Ex. 18 (Bravman Reb. Rpt.) ¶¶ 1834–1836; Ex. 29 (SAM20cv636-0489762).  Dr. Demaray had another meeting with two other Samsung employees in April 2017.  *See* Ex. 18 (Bravman Reb. Rpt.) ¶¶ 1834–1836. Dr. Demaray did not raise the alleged applicability of his technology to Samsung's semiconductor manufacturing business in that meeting or at any time prior to this lawsuit.  Ex. 30 (2023-01-20 R. Ashcraft Tr.) at 143:24–144:17.  Nor did Dr. Demaray accuse Samsung of infringing any patents

---

[8] For microprocessors, node size measures the length of the transistor gate and the smaller the node size, the more advanced the manufacturing capabilities.  *See* Ex. 20 (Neels Reb. Rpt.) ¶ 123.  Thus a 3 nm (nanometer) node is manufactured using more advanced techniques than a 5nm node, which uses more advanced manufacturing techniques than an 8nm node.  *See id.*  Generally, the smaller the node size, the higher the overall performance as more components can now fit on the same chip.  *Id.*

prior to filing this lawsuit. *Id.* (2023-01-20 R. Ashcraft Tr.) at 143:24–144:17; Ex. 31 (2023-03-07 M. Lefebvre Tr.) at 60:2–7; Ex. 32 (2023-01-18 D. Im Tr.) at 105:21–106:5; Ex. 33 (2023-03-20 E. Demaray Tr.) at 234:13–235:10; Ex. 34 (2023-03-21 E. Demaray Tr.) at 312:6–313:3, 322:22–323:23; Ex. 15 (2023-11-10 Giapis Tr.) at 87:4–7 ███████████████████████████████

████████████████████████████████████████████████████████████

██████████████), 88:1–4 (███████████████████████████████████

█████████████), 88:6–90:4 (██████████████████████████████████

████████████████████████████).

## IV.    ARGUMENT

35 U.S.C. § 271 makes clear that it is not infringement to make or use a patented product outside of the United States.  *See* 35 U.S.C. § 271.  Indeed, "foreign law alone, not United States law, currently governs the manufacture and sale of components of patented inventions in foreign countries." *Microsoft Corp.*, 550 U.S. at 456 (2007).  Yet, Demaray improperly bases the majority of its over-four-billion-dollar damages claim on Samsung's entirely extraterritorial conduct. Because Samsung is not infringing Demaray's patents under any asserted subsection of § 271 by buying and using the Accused Chambers outside of the U.S., summary judgment of non-infringement as a matter of law is necessary and should be granted.

### A.    Summary Judgment of Non-Infringement of the '276 Patent under § 271(f) Should Be Granted

As discussed above, 35 U.S.C. § 271(f) serves a narrow purpose: it was enacted to stop manufacturers from making components of patented inventions and exporting them abroad for assembly to circumvent United States patent laws.  The Supreme Court has made clear that § 271(f) "protects against '***domestic entities*** who ***export*** components from the United States.'" *WesternGeco*, 138 S.Ct. at 2138 (emphasis added).  Demaray's § 271(f) infringement allegations

are inconsistent with this law and fail for three independent reasons.  *First*, Samsung is not a domestic entity that "supplies or causes to be supplied" the accused chambers or ancillary components from the U.S.  35 U.S.C. § 271(f).  Its purchase and use of the Accused Chambers occurs extraterritorially.  *Second*, Samsung's purchase and use of replacement parts and staple articles outside the U.S. also does not meet the requirements of § 271(f).  *Third*, Samsung lacks the required intent under § 271(f)(2).  Summary judgment should be granted.

> 1.   Samsung's Extraterritorial Conduct Cannot Support Infringement Under § 271(f)

Both §§ 271(f)(1) and (2) require a domestic act of infringement: "supplies or causes to be supplied in or from the United States" components of a patented invention, with the intent that they will be combined abroad in a way that would infringe if combined in the U.S.  35 U.S.C. § 271(f); *WesternGeco*, 138 S.Ct. at 2138 (§ 271(f) "protects against domestic entities who export components from the United States.") (cleaned up).  Demaray improperly relies on Samsung's entirely extraterritorial conduct of purchasing the Accused Chambers from Applied outside the U.S. and using the Accused Chambers outside the U.S. to assert infringement under § 271(f).[9]

*First*, Demaray's attempt to impose liability on Samsung is not a permissible domestic application of § 271(f).  The Supreme Court in *WesternGeco* stated that § 271(f) "focuses on domestic conduct," but there is no domestic act by Samsung here.  *WesternGeco*, 138 S.Ct. at 2137.  Samsung does not supply the Accused Chambers; Applied does.  Demaray's infringement theory is based on the fact that Applied manufactures the Accused Chambers in Austin and then ships them to Samsung in Korea.  Ex. 13 (Giapis Op. Rpt.) ¶ 821.  As the Supreme Court said in

---

[9] Samsung also disputes that Demaray has shown that the Accused Chambers are shipped in components, rather than fully assembled.  But that is not at issue for purposes of this motion and need not be resolved to grant summary judgment.

*WesternGeco*, § 271(f) "protects against ***domestic entities*** who ***export*** [or cause to be exported] components from the United States." *WesternGeco*, 138 S.Ct. at 2138.  It is undisputed that Samsung Electronics Co. Ltd.—the Samsung entity that places the orders for the Accused Chambers—is not a domestic entity.  *See, e.g.*, Ex. 1 (SAM20cv636-0005966); Ex. 2 (SAM20cv636-0005970); Ex. 3 (SAM20cv636-0005982); Ex. 4 (SAM20cv636-0005988); Ex. 5 (2022-12-22 H. Choi Tr.) at 54:12–55:12; 55:18–56:11.

*Second*, Samsung does not *cause* the Accused Chambers to be "supplied from the United States."  As explained in detail above, Samsung orders the Accused Chambers from outside the U.S.  And to the extent Demaray argues that Samsung's extraterritorial purchase "causes" ▓▓▓ to export the chambers from the U.S., that too fails.  Causation does not extend to any "but-for" cause, and the Supreme Court has said proximate cause normally ends at "the first step" in the causal chain.  *See, e.g.*, *Holmes v. SIPC*, 503 U.S. 258, 271 (1992) (noting the "general tendency" not to stretch proximate cause "beyond the first step").  Here, Samsung is not the cause of the Accused Chambers being supplied from the U.S.  Samsung orders the Accused Chambers from Applied ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[10]  Ex. 5 (2022-12-22 H. Choi Tr.) at 50:19–53:9 (purchase orders are placed through a sales manager at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓); Ex. 1 (SAM20cv636-0005966); Ex. 2 (SAM20cv636-0005970); Ex. 3 (SAM20cv636-0005982); Ex. 4 (SAM20cv636-0005988).  The order is then routed, without Samsung's involvement, to Applied in ▓▓▓▓▓ Ex. 12 (2023-03-10 Deane Tr.) at 130:24–133:7 (▓▓▓▓▓▓▓▓▓▓▓▓

---

[10] As explained above, ▓▓▓ of the purchase orders at issue were sent to ▓▓▓▓ but for those, ▓▓▓▓▓ was still the entity responsible for manufacturing and exporting those chambers to Samsung in ▓▓▓  Ex. 6 (SAM20cv636-0005974); Ex. 7 (SAM20cv636-0005978); Ex. 8 (SAM20cv636-0006352); Ex. 5 (2022-12-22 H. Choi Tr.) at 54:12–55:12; 55:18–56:11.

█████████████████████ Demaray asserts that ████ not Samsung, arranges to have the Accused Chambers shipped from ████ to Samsung █████ Ex. 13 (Giapis Op. Rpt.) ¶ 821.

Demaray has not presented any evidence that Samsung controls or directs where Applied manufactures the Accused Chambers, and no such argument is included in Demaray's liability expert report or discovery responses. *See* Ex. 13 (Giapis Op. Rpt.) § XVI.E.a; Ex. 14 (Demaray's 6th Suppl. Interrog. Resp.) at 41–44; *Blauvelt*, 2019 WL 3359235 at * 2 (moving party can meet summary judgment burden by pointing to the absence of evidence to support the nonmoving party's case); *Celotex*, 477 U.S. at 325 (same). Likewise, Demaray has no evidence that Samsung controls or directs the location from where ████ exports the Accused Chambers or how ████ packages those chambers for shipment. *See* Ex. 13 (Giapis Op. Rpt.) § XVI.E.a; Ex. 14 (Demaray's 6th Suppl. Interrog. Resp.) at 41–44; *Blauvelt*, 2019 WL 3359235 at * 2; *Celotex*, 477 U.S. at 325.

An interpretation of § 271(f) that would result a foreign entity's (Samsung) liability for infringement based on its placing of an order with another foreign entity (█████████ entity) is contrary to the presumption against extraterritoriality. "Recognizing that § 271(f) is an exception to the general rule that our patent law does not apply extraterritorially, [the Court should] resist giving the language in which Congress cast § 271(f) an expansive interpretation." *Microsoft Corp.*, 550 U.S. at 441. Demaray cannot justify extending § 271(f)'s reach to Samsung, whose purchase and use of the Accused Chambers happens outside the United States. Samsung respectfully requests that summary judgment of no infringement under § 271(f) be granted.

        2.      Samsung's Purchase of Ancillary Products Such as █████████ ████████████████████ Fail to Give Rise to Infringement under § 271(f)(1)

Demaray also argues that Samsung infringes under § 271(f)(1) because it purchases ancillary products that it uses for maintenance of its chambers or in the manufacturing process.

Ex. 13 (Giapis Op. Rpt.) § XVI.E.a.   But this infringement theory fails for two independent reasons.  *First*, just as with the Accused Chambers, Samsung's purchase of these ancillary products cannot constitute infringement because Samsung does not commit a domestic act of infringement. For the same reasons as the Accused Chambers, the ancillary products such as the ███ and ████████████, are purchased by Samsung from Applied ████ and are received and used by Samsung outside of the U.S.  *See supra*, Section IV.A.1.  Further, for the ██████████████, Demaray has not even established that those products are supplied ***by anyone*** from the United States, let alone purchased, received, or used in the U.S. Ex. 18 (Bravman Reb. Rpt.) ¶¶ 1818–1826; *Blauvelt*, 2019 WL 3359235 at * 2; *Celotex*, 477 U.S. at 325.   Indeed, Samsung obtains █████████ from █████████████████████████████████████████████ ██████████.  Ex. 18 (Bravman Reb. Rpt.) ¶¶ 1818–1826.  As far as ██████ Demaray has adduced no evidence that the ██████ are obtained from the U.S.  *Id.*; *Blauvelt*, 2019 WL 3359235 at * 2; *Celotex*, 477 U.S. at 325.  Because there is no evidence that Samsung "supplies or causes to be supplied" these ancillary products from the U.S., Samsung cannot be liable for infringement under § 271(f) based on those products, either.  *See WesternGeco*, 138 S.Ct. at 2135. Samsung thus respectfully asks the Court to grant its motion for summary judgment that its purchase of these ancillary products does not give rise to liability under § 271(f)(1).

*Second*, § 271(f)(1) requires that the accused infringer supply or cause to be supplied from the United States "all or a substantial portion of the components ***of a patented invention***."  35 U.S.C. §271(f)(1) (emphasis added).  In order to find liability under § 271(f)(1), an accused infringer must export multiple components of a patented invention that are then combined abroad. *Life Techs. Corp. v. Promega Corp.*, 580 U.S. 140, 152 (2017); *WesternGeco*, 138 S.Ct. at 2138. Demaray does not assert, nor can it, that ancillary products such as ██████████████, or

████████████ satisfy this statutory requirement.[11]  Indeed, these ancillary products do not even trigger 271(f)(1) as they are not even claimed elements of the independent claims of the '276 patent.  Ex. 18 (Bravman Reb. Rpt.) ¶¶ 1818–1826.  Because these ancillary products are not claimed elements of the patented invention, they cannot comprise "all or a substantial portion of the patented invention" and Samsung cannot be liable under § 271(f)(1).

        3.      Demaray Cannot Show that Samsung had Knowledge of Infringement as Required under Section 271(f)(2) as a Matter of Law

Infringement under § "271(f)(2) requires a plaintiff to prove that the defendant (1) intended the combination of components; (2) knew that the combination he intended was patented; and (3) knew that the combination he intended would be infringing if it occurred in the United States." *WesternGeco L.L.C. v. ION Geophysical Corp.*, No. 4:09-CV-1827, 2012 WL 2568167, at *4 (S.D. Tex. June 29, 2012).  "Because the mental state required for infringement under Section § 271(f)(2) is equivalent to that required under Section § 271(c), the Court looks to the Supreme Court's analysis Section 271(c) for guidance."  *Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, No. 3:17-CV-01118-BEN-BLM, 2019 WL 4452986, at *12 (S.D. Cal. Sept. 16, 2019).  Under *Aro Mfg. Co. v. Convertible Top Replacement Co., Inc.*, liability under Section § 271(c) requires "a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing." 377 U.S. 476, 488 (1964).  Knowledge of the patent alone is insufficient to meet these requirements.  *See id.*  Because Demaray has adduced no evidence that Samsung knew that "combining components" into the

---

[11] Each Accused Chamber includes at least ██ key components, none of which include the ████ ████████████████. Ex. 18 (Bravman Reb. Rpt.) ¶¶ 1818–1826.  Thus, for example, each ████ is only ████ components (i.e., at most roughly ██ of the total components), which is not a quantitatively "substantial" portion of the components under 271(f).  *See id.*; *Life Techs.*, 580 U.S. at 152.

Accused Chambers would infringe the Asserted Patents if combined in the U.S., summary judgment of no infringement under § 271(f)(2) should be granted.

Even if Demaray argues that Samsung was generally aware of the Asserted Patents based on ███████████████ presentation, that is insufficient under § 271(f)(2), which requires specific intent akin to § 271(c).  *Whitewater W. Indus.*, 2019 WL 4452986 at *12.  That ████ █████████ was focused on the application of Demaray's technology to manufacturing batteries—specifically, ███████████████ manufacture—not chambers used in manufacturing microprocessors or DRAM semiconductor chips.  *See* Ex. 18 (Bravman Reb. Rpt.) ¶¶ 1834–1836; Ex. 29 (SAM20cv636-0489762); Ex. 35 (2023-10-27 Chandler Dep. Tr.) at 277:19–278:5 (battery field of use is not comparable).  Nothing in that presentation identified the Accused Chambers or any of Samsung's products as allegedly infringing the Asserted Patents.  *See* Ex. 18 (Bravman Reb. Rpt.) ¶¶ 1834–1836); Ex. 29 (SAM20cv636-0489762).  Demaray did not accuse Samsung of infringement during the ███████████ meetings or in any subsequent correspondence.  Ex. 30 (2023-01-20 R. Ashcraft Tr.) at 143:24–144:17; Ex. 31 (2023-03-07 M. Lefebvre Tr.) at 60:2–7; Ex. 32 (2023-01-18 D. Im Tr.) at 105:21–106:5.  Indeed, Samsung employee Mr. Robert Ashcraft, who attended the ██████████ meeting, testified that Dr. Demaray did not suggest in any way that his technology had any applicability to Samsung's semiconductor manufacturing.  Ex. 30 (2023-01-20 R. Ashcraft Tr.) at 143:24–144:17.

████████████████████████████████████████████
████████████████████████████████████████████.

Ex. 33 (2023-03-20 E. Demaray Tr.) at 234:13–235:10; Ex. 34 (2023-03-21 E. Demaray Tr.) at 312:6–313:3, 322:22–323:23; Ex. 36 (2023-03-15 B. Marcucci Tr.) at 102:21–103:10, 164:3–166:9.  Demaray also offers no expert testimony on this issue.  Ex. 15 (2023-11-10 Giapis Tr.) at

87:4–7, 88:1–4; 88:6–90:4.  Because Demaray has no evidence whatsoever that Samsung had knowledge that the intended combination of components or use of the Accused Chambers would be infringing if it occurred in the U.S., Demaray's claim under § 271(f)(2) fails as a matter of law for this reason too.  *Blauvelt*, 2019 WL 3359235 at * 2; *Celotex*, 477 U.S. at 325.  Summary judgment should be granted that Samsung does not infringe under § 271(f)(2).

At a minimum, summary judgment should be granted for the damages period prior to July 14, 2020, the date this suit was filed.  *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 476 F. Supp. 2d 1143, 1158 (N.D. Cal. 2007), *clarified on denial of reconsideration*, No. C 04-2000 CW, 2007 WL 1108615 (N.D. Cal. Apr. 11, 2007) (granting summary judgment of no pre-suit liability under 35 U.S.C. § 271(c) due to lack of evidence of intent to infringe).

### B.    Demaray's Use of Samsung's DRAM and Processors Manufactured Outside the U.S. as Its Royalty Base for Alleged § 271(f) Infringement Fails as a Matter of Law

If the Court grants Samsung's motion that its extraterritorial conduct is not infringement under § 271(f), it need not decide whether Demaray's damages theory is appropriate.  But even assuming Demaray can prove infringement under § 271(f), the alleged infringing act would be the domestic act of exporting the Accused Chambers.  Samsung's subsequent use of the Accused Chambers outside of the U.S. is not infringement and there is no genuine issue of material fact that Demaray's damages theory is inappropriate in this case.  As explained in Samsung's concurrently filed *Daubert* motion, Demaray failed to show that there is an established industry practice that would support such a use royalty.  *E.g. See Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1561-1562 (Fed. Cir. 1983) (overturning damages award where there was "no evidence that users in the food industry upon purchase of food processing equipment also expect to pay a use royalty").

As explained above, nothing in § 271(f) prohibits Samsung from using the Accused Chambers to manufacture products outside the United States.  *See Life Techs. Corp.*, 580 U.S. at

152.  Indeed, as the Supreme Court explained in *WesternGeco*, "the overriding purpose of § 284 is to afford patent owners complete compensation for infringements" and the "infringements" under § 271(f) are the supply of the Accused Chambers abroad.  138 S.Ct. at 2137 (internal quotations omitted); *id*. at 1238 ("[T]he focus of § 284, in a case involving infringement under § 271(f)(2), is on the act of exporting components from the United States.").  But Demaray's damages theory under § 271(f) seeks royalties based on sales of non-accused products manufactured abroad using the Accused Chambers, rather than based on the Accused Chambers themselves.  By contrast, the damages award affirmed in the *WesternGeco* case compensated for the harm suffered by the patentee proximately caused by the exportation of the accused product.  *Id.* at 2133 ("The conduct in this case that is relevant to that focus clearly occurred in the United States, as it was ION's domestic act of supplying ***the components that infringed WesternGeco's patents***.  Thus, the lost-profits damages that were awarded to WesternGeco were a domestic application of § 284.") (emphasis added).  The *WesternGeco* Court did not hold that ***non-infringing products*** made outside the U.S. from the extraterritorial use of an allegedly infringing product could be subject to a reasonable royalty.  Damages under § 271(f) must be tied to the '276 patent's value to the exported product—the Accused Chambers—not to non-accused products such as Samsung's DRAM and microprocessors.  *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1546 (Fed. Cir. 1995) (the test for damages under § 284 is not solely a "but for" test, damages must be a foreseeable consequence of the infringement); *see also Simo Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 396 F. Supp. 3d 323, 350–51 (S.D.N.Y. 2019) ("patentees may recover for foreign injuries caused by domestic acts of infringements—as long as, of course, those injuries are proximately caused by the domestic acts.").  Samsung's use of the Accused Chambers is an entirely extraterritorial act that it is not prohibited by § 271(f); Demaray's inclusion of

Samsung unaccused product revenues in its damages base fails as a matter of law.

C.      **Samsung's Use of the Accused Chambers Outside the U.S. Does Not Infringe the Asserted Patents under § 271(a) as a Matter of Law[12]**

Infringement under § 271(a) is limited to making, using, offering to sell, or selling "any patented invention *within the United States*," or importing "*into the United States* any patented invention." 35 U.S.C. § 271(a).  Performing these acts *outside* the United States is not an act of infringement under § 271(a).  *Microsoft Corp.*, 550 U.S. at 441; *NTP*, 418 F.3d at 1313 ("Section 271(a) is only actionable against patent infringement that occurs within the United States.").

Demaray, however, alleges that Samsung infringes the '657 patent (which has only method claims) by using the Accused Chambers *outside* the United States to manufacture processor products.  Ex. 13 (Giapis Op. Rpt.) § XVI.E.b (accusing the ███████ chambers under the '657 patent).  █████ of the ████████████ accused under the '657 patent are located and used at Samsung's facilities in █████ and are therefore not used "within the United States."  Ex. 17 (Schoettelkotte Reb. Rpt.) ¶ 299; Ex. 20 (Neels Reb. Rpt.) ¶ 63, Table 1 (showing that █ of Samsung's accused ████████ chambers are in ██████ Ex. 21 (Samsung's 23rd Suppl. Interrog. Resp.) at 22–24 (same).  The remaining █ accused ████████████████████ chambers that are located outside the United States are not accused under the '657 patent.  Ex. 13 (Giapis Op. Rpt.) § XVI.E.b (accusing the ████████ chambers under the '657 patent); Ex. 17 (Schoettelkotte Reb. Rpt.) ¶ 299; Ex. 20 (Neels Reb. Rpt.) ¶ 63, Table 1 (showing that █ of Samsung's accused ████████ chambers are in ██████ Ex. 21 (Samsung's 23rd Suppl. Interrog. Resp.) at 22–24 (same).  Samsung's use of the Accused Chambers outside of the United States is

---

[12] In order to avoid burdening the Court with unnecessary summary judgment briefing, Samsung asked Demaray to confirm whether it continues to assert § 271(a) infringement over foreign use of the Accused Chambers, but Demaray did not respond.

not infringement under § 271(a) as a matter of law, and summary judgment should therefore be granted as to the ▮▮ Accused Chambers used only outside the United States.[13]

Demaray also alleges that Samsung infringes the '276 patent by using the accused ▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Chambers outside the United States to manufacture DRAM and processor products. Ex. 13 (Giapis Op. Rpt.) ¶ 462. It is undisputed that Samsung has not "use[d] … within the United States" or "import[ed] into the United States" the non-US-based ***Accused Chambers***, which were exported by Applied Materials to Samsung facilities in Korea.[14] Ex. 18 (Bravman Reb. Rpt.) ¶¶ 474–477. Ex. 20 (Neels Reb. Rpt.) ¶ 63, Table 1 (showing that ▮▮ of Samsung's Accused Chambers except ▮▮▮▮▮ chambers are in ▮▮▮ Ex. 21 (Samsung's 23rd Suppl. Interrog. Resp.) at 21–25 (same). And it also is not disputed that the DRAM and processor products themselves are not infringing. Ex. 18 (Bravman Reb. Rpt.) ¶¶ 471–473. That is not infringement under § 271(a) as a matter of law, and summary judgment should therefore be granted as to the ▮▮ Accused Chambers used only outside the United States. *See Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1330–31 (Fed. Cir. 2018) (affirming summary judgment of no infringement with respect to foreign acts where the patentee "failed to present any evidence establishing the required domestic activity").

### D.    Summary Judgment of Non-Infringement of the '657 Patent under § 271(g) Should Be Granted

Demaray also asserts infringement of the '657 patent under § 271(g) for Samsung's use of the Accused Chambers outside of the U.S. to manufacture processors that are then imported into the U.S. Section 271(g) provides that "[w]hoever without authority imports into the United States

---

[13] As noted above, Samsung uses ▮ accused ▮▮▮▮ chambers in its ▮▮▮ facility, which are not at issue in this motion.

[14] This argument does not apply to the ▮▮▮▮▮ chambers located in Samsung ▮▮▮▮ ▮ facility, which as noted are not at issue in this motion.

or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer," but that "[a] product which is made by a patented process will … not be considered to be so made after[] it is materially changed by subsequent processes." 35 U.S.C. § 271(g). "The 'materially changed' exception of § 271(g) requires, at a minimum, that there be a real difference between the product imported, offered for sale, sold, or used in the United States and the products produced by the patented process." *Bio– Technology Gen. Corp. v. Genentech, Inc.,* 80 F.3d 1553, 1560 (Fed. Cir. 1996) ("If claim 2 were limited to a method for producing met-hGH, then we would have to determine whether BTG's conversion of met-hGH to hGH produced a 'materially changed' product."). In other words, if the "additional processing steps … change the physical or chemical properties of a product" in a way that "changes the basic utility of a product," that change is material. *See Eli Lilly*, 82 F.3d at 1577.

The undisputed evidence demonstrates that there is a material change in the product between the ██████████████ in which the Accused Chambers are used and the ████████ ██████████████████████ manufacturing process for processors. And, "[t]here is no evidence that [the] intermediate[]" that exists after the Accused Chambers are used "have any commercial utility." *Flexsys Am. LP v. Kumho Tire U.S.A., Inc.*, 726 F. Supp. 2d 778, 801 (N.D. Ohio 2010) (granting summary judgment of non-infringement under § 271(g) where intermediary produced by patented process had no commercial utility). It is only after Samsung performs literally ████████████████████████ that the final processors are completed. Ex. 18 (Bravman Reb. Rpt.) ¶¶ 1843–44; Ex. 24 (2022-12-20 J. Choi Tr.) at 66:13– 15; Ex. 25 (2022-11-29 D. Anderson Tr.) at 34:11–24; Ex. 26 (2023-06-09 J. Kim Tr.) at 86:11– 87:5. Demaray performs no analysis, and offers no evidence, that the post-Accused Chambers intermediary achieves any of the properties of the final processor or that the ████████████

███████████████ still exist in the final products.  Ex. 18 (Bravman Reb. Rpt.) ¶¶ 1843–44;

Ex. 15 (2023-11-10 Giapis Tr.) at 110:11–111:24; 113:20–116:3; Ex. 12 (2023-03-10 Deane Tr.)

at 91:20–93:15 (██████ used to apply ████████████████████████ and then

███████████████████████ The material changes between the use of the Accused

Chambers and the final products demonstrate that Samsung does not infringe the '657 patent.  *Eli*

*Lilly & Co. v. Am. Cynamid Co.*, 66 F. Supp. 2d 924, 931–32 (S.D. Ind. 1999) (even where patentee

tested intermediate and showed it to have some benefits, summary judgment of no infringement

granted because it did not eliminate the "significant structural differences" or the material

difference that the final product was "unusually effective").

## V.    CONCLUSION

    For the foregoing reasons, Samsung respectfully asks that its motion for partial summary

judgment be granted that Samsung does not infringe the Asserted Patents for its use of the Accused

Chambers outside the United States.

Dated: November 21, 2023

                                       Respectfully submitted,

                                       */s/ Kat Li*

John M. Desmarais (*pro hac vice*)
jdesmarais@desmaraisllp.com
Yung-Hoon Ha (*pro hac vice*)
yha@desmaraisllp.com
Cosmin Maier (*pro hac vice*)
cmaier@desmaraisllp.com
Christian Dorman (*pro hac vice*)
cdorman@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue, 26th Floor
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

Adam R. Alper (*pro hac vice*)
adam.alper@kirkland.com
Akshay S. Deoras (*pro hac vice*)
akshay.deoras@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

Michael W. De Vries (*pro hac vice*)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400

Sharre Lotfollahi (*pro hac vice*)
sharre.lotfollahi@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4200

Leslie Schmidt (*pro hac vice*)
leslie.schmidt@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
Telephone: (212) 446-4800

Kat Li
Texas State Bar No. 24070142
kat.li@kirkland.com
KIRKLAND & ELLIS LLP
401 Congress Ave.
Austin, TX 78701
Telephone: (512) 678-9100

*Attorneys for Defendants, Samsung Electronics
Co., Ltd., Samsung Austin Semiconductor, LLC,
Samsung Electronics America, Inc., and
Samsung Semiconductor, Inc.*